```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

                              )
UNITED STATES OF AMERICA      )
                              )
        v.                    )  CRIMINAL NO. 04-10288-RWZ
                              )
JASON MATTHEWS                )
                              )
```

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, hereby files this sentencing memorandum to aid the Court in its disposition of the above-captioned action. As set forth more fully below, the government submits that United States Probation has correctly determined that defendant Jason Matthews ("Matthews") should be held accountable for an amount of oxycodone that when converted to its marijuana equivalent pursuant to U.S.S.G. 2D1.1(a)(3) is equivalent to 8,826 kilograms of marijuana. In addition, this Court should not reduce Matthews' offense level for acceptance of responsibility, find that Matthews deserves a minor role adjustment, or find that Matthews' criminal history category substantially over represents the seriousness of his criminal history. In short, this Honorable Court should sentence Matthews within the guideline sentencing range as determined by United States Probation.

OxyContin Amount

United States Probation correctly determined that Matthews should be held responsible for a quantity of oxycodone that

results in a base offense level of 34.  This calculation includes the OxyContin Matthews admitted to distributing between December 2001 and November 2003.  During a February 5, 2004 post arrest interview, Matthews told DEA SA Steven Story that he and his partner "Joe Cream" obtained OxyContin on more than fifty occasions from "Karlos."  There is no question that "Karlos" is co-defendant Carlos Espinola.  Matthews told SA Storey that "Karlos" was a member of the "Red Devils" motorcycle club, was of Portuguese descent, lived on a third floor apartment on Endicott Street in Peabody, and had tattoos on his forearms.  All of those characteristics match Carlos Espinola.

       Defense counsel's argument that Matthews should not be sentenced for the amounts of OxyContin he admitted to distributing because those distributions occurred "essentially outside of the inclusive dates of the conspiracy" should be rejected.[1]  Count One of the indictment charges Matthews with conspiring to distribute oxycodone "[b]eginning on an unknown date but at least by in or about October 2003 and continuing thereafter until on or about June 10, 2004."  Matthews told SA Story that he distributed OxyContin from December 2001 to November 2003.  The entire period between December 2001 and November 2003 is covered by the conspiracy indictment.  Contrary

---

[1] This Honorable Court held co-defendant Jose Melo responsible for three hundred OxyContin tablets he admitted to distributing.

to defense counsel's suggestion, the conspiracy count includes the period of time prior to October 2003. The language of the conspiracy count ["[b]eginning on an unknown date..."] provided Matthews with notice that he would be held responsible for all of his criminal activity within the conspiracy.

Assuming *arguendo* that the conspiracy count does not cover the entire period from December 2001 to November 2003, Matthews none-the-less should be punished for all of the Oxycontin he distributed. All of OxyContin distributions Matthews confessed to, if they fall outside the conspiracy count, are relevant conduct and properly included in determining the total drug amount used for sentencing.

The First Circuit has held that in determining the base offense level in a drug case, "[t]he drug quantity properly attributable to a defendant is not limited to the drugs involved in the offense of conviction." *United States v. Huddleston*, 194 F.3d 214, 223 (1$^{st}$Cir. 1999). "The Sentencing Guidelines, as applied to drug cases, require the sentencing judge to determine quantity including all amounts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction,' whether or not the defendant has been charged with those transaction." *United States v. Santos Batista*, 239 F.3d 16, 20-21 (1st Cir. 2110), *quoting U.S.S.G. § 1B1.3(a)(2).* For two or more offenses to be considered part of a common scheme or

3

plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. *U.S.S.G. §1B1.3, comment. (N.9(A))*. In *Santos-Batista*, the First Circuit explained that "[b]efore uncharged conduct may be used in the sentencing calculus, the burden is on the government to demonstrate a sufficient nexus between that conduct and the offense of conviction. This burden, however, is met by a mere preponderance of the evidence. Further, "[t]he rules of trial evidence do not apply; in weighing the facts the sentencing court may evaluate virtually any dependable information." *United States v. Santos Batista*, 239 F.3d 21.

In *United States v. Barbour*, the First Circuit upheld the District Court's determination that a defendant was responsible for sentencing purposes for quantities of drugs that fell outside the time frame specified in the conspiracy indictment. The First Circuit found that the pre-indictment drug quantities were relevant conduct and part of the same evolving conspiracy. *United states v. Barbour*, 393 F.3d 82, 92 (1St Cir. 2004).

As the Honorable Court is aware, this case involves a an OxyContin distribution conspiracy operating in the Cape Ann area. Matthews and ten co-defendants have pleaded guilty to participation in the conspiracy and two defendants are scheduled for trial on May 8, 2006. The evidence establishes that Carlos

Espinola, of Endicott Street in Peabody, regularly supplied Joseph Baldassano, of Gloucester, with large quantities of OxyContin for resale in the Cape Ann area.  The government expects that co-defendant Joseph Baldassano ("Baldassano") will testify that Matthews delivered OxyContin for Baldassano on over fifty occasions,[2] and that their drug related relationship began in 2002.

The government submits that the OxyContin distributions discussed By Matthews in his statement to SA Story are part of the same common scheme or conspiracy charged in Count One of the indictment.  The drug is the same (OxyContin), the supplier is the same (Carlos Espinola), and the accomplices are the same (Joe Baldassano and Matthew Cream).[3]  As such, the Court should hold Matthews responsible for all of the OxyContin he admitted to

---

[2]The undersigned attorney for the government notified Ms. Lisa Urso, the Court's docket clerk, by telephone, that the government expects to call a number of witnesses at Matthews' sentencing hearing scheduled for the afternoon of Monday, May 8, 2006.  The United States requests permission to call DEA SA Steven Story, co-defendant Joseph Baldassano, and possibly other witnesses at Matthews' sentencing hearing.  Matthews' contests the OxyContin amount attributed to him in the Presentence Report and the requested witnesses will assist the Court to determine the amount of OxyContin for which Matthews should be held responsible.

[3]Matthews told SA Story that his partner was "Joe Cream." The government submits that was a reference to Joe Baldassano and Matthew Cream. Matthews combined his two accomplices names in an unsuccessful attempt to confuse SA Story.  This was similar to Matthews ploy in specifying that his supplier spelled his name "Karlos."

distributing.[4]

<u>Role in the Offense</u>

United States Probation correctly did not recommend a role in the offense reduction for Matthews. In his objection to the Presentence Report, defense counsel informed United States Probation that he intends to argue for a decrease in the offense level on the ground that Matthews was a minor participant. The government objects to any role reduction for Matthews.

"To qualify as a minor participant, a defendant must prove that he is both less culpable than his cohorts in the particular criminal endeavor and less culpable than the majority of those within the universe of persons participating in similar crimes." *United States v. Santos,* 357 F.3d 136 (1st Cir. 2004), *citing United States v. Sanchez,* 354 F.3d 70, 74 (1st Cir. 2004). A defendant seeking a downward role adjustment bears the burden of proof on the issue. *United States v. Santos*, 357 F.3d at 142.

Matthews obtained OxyContin for resale on more than fifty occasions. He stands out as one of the more prolific drug dealers in this conspiracy. He should not be awarded a two level decrease as a minor participant.

---

[4] The Government questions the applicability of *United States v. Singleterry,* 29 F.3d 733 (1st Cir. 1994) to sentencing determinations which are made by a preponderance of the evidence. Assuming *arguendo* that it does apply, Baldassano's testimony of Matthews drug activity prior to the charged conspiracy and the other evidence in the case corroborate Matthews' admissions to SA Story.

Other Objections

The government opposes the other objections lodged by the defendant to the Presentence Report.  The government contends that United States Probation correctly determined Matthews' Guideline sentencing range and that this Honorable Court should sentence within that range.  The government reserves the right to provide the Court with further argument at sentencing.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

                By:/s/:  *David G. Tobin*
                DAVID G. TOBIN
                Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 1, 2006.

                /s/:  *David G. Tobin*
                DAVID